664 So.2d 739 (1995)
Richard H. TURNER
v.
DAMERON-PIERSON COMPANY, LTD.
No. 95-CA-0143.
Court of Appeal of Louisiana, Fourth Circuit.
November 16, 1995.
Joseph G. Albe, New Orleans, for Plaintiff/Appellant, Richard Turner.
W. Malcolm Stevenson and Robert E. Rougelot, Monroe & Lemann, New Orleans, for Defendant/Appellee, Dameron-Pierson Company, Ltd.
Before BYRNES, CIACCIO and MURRAY, JJ.
MURRAY, Judge.
The issue presented in this appeal is whether the trial court abused its discretion by refusing to grant a new trial on the basis of the discovery of evidence that was withheld by the defendant during discovery.
Richard Turner filed suit against his employer, Dameron-Pierson Co., Ltd., alleging that he was discharged in retaliation for his having filed a worker's compensation claim in violation of La.Rev.Stat. 23:1361B. Dameron-Pierson defended the claim on the basis *740 that Mr. Turner was discharged for violating company policy by panhandling in his company uniform rather than because he had filed a compensation claim.
The case was tried to the court on April 4, 1994. During the course of the trial Dameron-Pierson attempted to have a witness testify regarding a document that contained information about other Dameron-Pierson employees who had filed worker's compensation claims during the years of 1989, 1990 and 1991. The information contained in this document had been requested by counsel for Mr. Turner during discovery, but was not forthcoming from Dameron-Pierson, allegedly because of a misinterpretation of the discovery request by its counsel.
At the conclusion of the trial, the court entered judgment in favor of Dameron-Pierson, finding that it had satisfied its burden of showing that Mr. Turner's termination was based on something other than his worker's compensation claim.
Mr. Turner's counsel filed a Motion for New Trial based on Dameron-Pierson's failure to respond truthfully to discovery, alleging that withholding the information thwarted his efforts to show that his client was discharged because he filed a worker's compensation claim. The court denied the new trial motion. Although the court found that the information plaintiff sought may have been wrongfully withheld, it determined that the newly discovered evidence would not have resulted in a different verdict since the court's determination of the reason for Mr. Turner's discharge was based on the credibility of Mr. Vincent Rizzuto, Assistant Warehouse Manager for Dameron-Pierson.
The grant of a new trial on the basis of newly discovered evidence is governed by La.Code Civ.Proc. art. 1972(2), which provides that:
A new trial shall be granted, upon contradictory motion of any party, in the following cases:
. . . . .
(2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during trial; ...
Section (2) of article 1972 has been interpreted to require a new trial only if the evidence offered meets certain requirements. The evidence must have been discovered since the trial, and it must be shown that it could not with due diligence have been discovered before or during the trial. Strobel v. Schlegel, 145 So.2d 664 (La.App. 4th Cir. 1962). In addition the evidence must not be merely cumulative, and it must be such that it would tend to change the result of the case. Barker v. Rust Engineering Co., 428 So.2d 391 (La.1983), Wright v. Hirsch, 572 So.2d 783 (La.App. 4th Cir.1990).
During the course of pre-trial discovery, counsel for Mr. Turner propounded interrogatories and requests for production of documents to Dameron-Pierson. Interrogatory no. 7 sought the names, and last known addresses of any Dameron-Pierson employees who, in the prior ten years, were terminated after having made claims for worker's compensation, and the reason each such employee was terminated. Request for production of documents no. 3 sought production of a copy of the "Discharge Notice" of each employee identified in response to interrogatory no. 7.
Dameron-Pierson responded to interrogatory no. 7 by stating that none of its employees had been terminated after filing a claim for worker's compensation benefits, and to request for production no. 3 by stating that it was not applicable.
During trial Dameron-Pierson attempted to offer a list of employees who had filed worker's compensation claims, and to use this list in connection with the testimony of Mr. Robert Schroeder. Counsel for Mr. Turner contends that this was the very information requested by him in interrogatory no. 7 and request for production no. 3. He further contends that having this information would have afforded him the opportunity to contact these employees to attempt to show that Dameron-Pierson made a practice of terminating employees who filed worker's compensation claims.[1]
In reviewing the document in question we note that a number of the people listed as filing worker's compensation claims are no *741 longer employed by Dameron-Pierson. For example, in 1989, of eight employees receiving worker's compensation benefits for work-related injuries, six resigned, one was discharged and one died. In 1991, the year in which Mr. Turner was terminated, nine employees filed worker's compensation claims and two were laid off, one was discharged, four resigned, and two were still employed. (See Defendant's Exhibit No. 3). We agree that Dameron-Pierson's response to discovery led Mr. Turner's counsel to believe that no Dameron-Pierson employees were terminated after filing compensation claims. We also agree that counsel could have used the list to attempt to contact these employees in an effort to establish that Dameron-Pierson made a practice of terminating such employees. However, even if it were proven that there was such a practice, that would not be dispositive of Mr. Turner's claim on the merits nor his right to a new trial.
La.Rev.Stat. 23:1361(B) provides that:
B. No person shall discharge an employee from employment because of said employee having asserted a claim for benefits under the provisions of this Chapter or under the law of any state or of the United States. Nothing in this Chapter shall prohibit an employer from discharging an employee who because of injury can no longer perform the duties of his employment.
The mere fact that an employee who has filed a worker's compensation claim is discharged does not prove a violation of the statute. An employer is not precluded from terminating an employee who has filed a claim; he is precluded from firing such an employee because of the claim. An employer can defend against a claim such as Mr. Turner's by showing that the employee was discharged for a reason other than filing a claim. McDonald v. Television Management Inc., 643 So.2d 802 (La.App. 4th Cir.1994).
In this case the court found that Dameron-Pierson had borne its burden of proving that Mr. Turner's termination was based on his violation of company policy rather than his having filed a compensation claim. That decision is supported by the record.
Richard Turner began his employment as a truck driver with Dameron-Pierson on March 26, 1991. He sustained a work-related injury that rendered him disabled for approximately six weeks. He filed a claim for worker's compensation benefits immediately after his injury. He was released to return to work on May 13, 1991, and worked a full day on that date. On May 14 and 15, he called in sick as required by company policy.
While Mr. Turner was out sick, Dameron-Pierson learned that he had been panhandling from door-to-door in his company uniform. When he returned to work on May 16, 1991, Joe Glorioso, Warehouse Manager, and Vincent Rizzuto, Assistant Warehouse Manager, confronted him regarding the alleged panhandling. Mr. Rizzuto testified at trial that Mr. Turner, who admitted panhandling in his uniform, was informed that this type of activity violated company policy, and was warned that engaging in this type of activity again could result in his termination. Mr. Turner signed a company document acknowledging a conduct violation.
Mr. Turner did not come into work on May 17 through 19, 1991, nor did he call in as required by company policy. During that time, Dameron-Pierson received another report of Mr. Turner soliciting money in his company uniform. When he returned to work on May 20, 1991, he was confronted concerning the second report of panhandling. Mr. Rizzuto testified that Mr. Turner again admitted to engaging in the activity despite the warning he received on May 16, 1991. Consequently, he was terminated.
Our review of a trial court's ruling on a motion for new trial is limited. We may not disturb the court's factual findings unless the record clearly establishes that those findings are manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
*742 In denying the new trial motion the court found that Mr. Turner failed to show that the evidence would tend to change the outcome of the case. The court specifically stated that its finding that Mr. Turner was not terminated because he filed a compensation claim was based on the testimony of Mr. Rizzuto, who the court found to be credible.
When a trial court's factual findings are based on decisions concerning witness credibility, those decisions are deserving of respect since only the fact finder can interpret and hear a witness's demeanor and tone which can have a great impact on believing and understanding what the witness has said. Rosell v. ESCO, 549 So.2d 840 (La.1989).
We find that the trial court did not abuse its discretion in denying the motion for new trial based on its finding that the evidence, even though improperly withheld, would not have changed the outcome. This decision is amply supported by the record. For this reason, we affirm.
AFFIRMED.
NOTES
[1] In defense of the new trial motion, counsel for Dameron-Pierson explained its withholding the information as resulting from his misunderstanding the meaning of Mr. Turner's discovery request. That is, counsel understood plaintiff to be requesting information regarding employees who were fired because they filed worker's compensation claims. This interpretation is, to say the least, suspect. Counsel would have this court believe that it interpreted the interrogatory as tantamount to a request for admission. There is no question that the information contained in the document offered at trial was responsive to interrogatory no. 7, and should have been provided to counsel for Mr. Turner.