## BARLOW v. SOUTHERN CITIES DISTRIBUTING CO. et al.

### No. 4473.

Court of Appeal of Louisiana. Second Circuit.

March 6, 1933.

Jackson & Smith and Barnette & Roberts, all of Shreveport, for appellants.

Herold, Cousin & Herold, of Shreveport, for appellee.

TALIAFERRO, Judge.

On January 12, 1930, near the hour of 10 o'clock a. m., the Saenger building, owned by defendant, A. & J., Inc., located on the corner of Louisiana avenue and Milam street in the city of Shreveport, was wrecked by an explosion of natural gas accumulated in its basement. Natural gas is supplied this building, as well as to the city of Shreveport generally, by defendant Southern Cities Distributing Company, under and by authority of franchise from said city. Plaintiff alleges that the natural gas, the explosion of which caused the wrecking of said building, escaped into the building from the mains and laterals of the Southern Cities Distributing Company and the service pipes of the A. & J., Inc.

We quote from plaintiff's petition the following articles which disclose the predicate upon which this suit is based:

"9. That the said Southern Cities Distributing Company had complete control, not only of the laying of the said main and laterals, but over their continued operations and was charged with the duty of preventing the escape of gas therefrom.

"10. That the said A. & J., Inc., was the owner and had complete charge and control of certain gas pipes or lines commonly known as service pipes which had been installed by said company for the purpose of conveying gas from the mains and laterals of the said Southern Cities Distributing Company through the basement and into said Saenger building.

"11. That the said A. & J., Inc., was charged with the duty of preventing the escape of gas from said service lines into the basement of said building.

"12. That the escape of the gas from the said main and laterals and service lines which caused the wrecking of said building, was due entirely to the fault and negligence of the said Southern Cities Distributing Company and the said A. & J., Inc., in permitting such gas to escape from their said mains, laterals and service pipes into the basement of said building.

"13. That the said laterals were improperly and negligently connected to the said gas main and were allowed to remain in an insecure and unsafe condition so that they finally be-

came disconnected and permitted the escape of gas from said main and laterals.

"14. That the said Southern Cities Distributing Company had left an abandoned lateral open at both ends leading from the vicinity of its main on Louisiana avenue across said avenue to a point near the property line of the A. & J., Inc., through and around which the escaping gas passed beneath the street to the property of the said A. & J., Inc., and then passed into the basement of the Saenger building through fissures in the ground and around and through abandoned service pipes left there by A. & J., Inc.

"15. That the said Southern Cities Distributing Company and the said A. & J., Inc., knew, or by the exercise of reasonable care, should have known that the said gas was escaping from the mains, laterals and service pipes into the basement of said building, but took no action to prevent such escape."

Plaintiff further alleges that at the time of the explosion he was within said building as a customer of the Hawkins Drug Company, Inc., lessee of said building, and as a result of said explosion he sustained numerous abrasions and cuts on his body and legs, and suffered the loss of four teeth; that his nervous system was severely shocked and permanently impaired, resulting in extreme nervousness and insomnia; that he was confined to his home ninety days following said injuries, the greater part of which period he was unable to leave his bed. He avers that, prior to being injured, he was receiving $175 per month regularly, but since that time his monthly earnings have not exceeded $25 on an average; that he has been forced to incur medical and physician's bills of $200 and dentist's bill to the amount of $100, all as a consequence of his said injuries. Plaintiff sues for $8,800 made up of the following items:

For pain and suffering..............$1,000.00
Loss of four (4) teeth.............. 1,500.00
Loss of wages and earning power.... 3,000.00
Impairment of physical condition and
　　nervous system................ .... 3,000.00
For expenses incurred and to be in-
　　curred, as hereinabove set out..... 300.00
　　　　　　　　　　　　　　　　　──────────
　　　　　　　　　　　　　　　　　$8,800.00

Defendant Southern Cities Distributing Company admits the explosion from natural gas, as alleged, but denies that such gas escaped from its mains or laterals into the basement of the building; and denies any negligence on its part in laying of its mains and laterals for the conducting of gas to the service pipes of the A. & J., Inc., and denies any negligence on its part in connecting its laterals with said service pipes. Plaintiff's presence in the building when the explosion took place, and the nature, extent, and duration of his alleged injuries, are all denied.

Defendant A. & J., Inc., denies any responsibility for the explosion which practically destroyed its building, but alleges that the gas had escaped from the mains and pipes of its codefendant and found its way into the basement of the building. It denied any negligence in the laying and installing of the service pipes in its building; and alleges that same was done in accordance with the city plumbing code, and that the pipes were inspected and found to be in perfect condition; and were, as a matter of fact, in such condition, and adequate for the purpose for which installed. Plaintiff's presence at the time of, and the nature, extent, and duration of his alleged injuries from, the explosion, are denied.

This defendant further alleges that, if for any reason it should be held liable for the accident out of which this suit arose, inasmuch as said accident was the direct and proximate result of the negligence of its codefendant, in permitting the escape of gas from its mains, any liability that might be imposed upon this defendant would be purely secondary to that of its said codefendant and the direct result of said codefendant's fault.

The case was tried on the issues tendered by the aforesaid pleadings, and judgment for $1,730 was rendered for plaintiff against the Southern Cities Distributing Company. His demands against the A. & J., Inc., were rejected at his costs. Plaintiff and the cast defendant both applied for new trials. Plaintiff complains only of the inadequacy of the judgment in his favor, while the defendant's position is that the judgment against it is contrary to the law and evidence. Both applications were denied, and both parties have appealed to this court.

This suit is one of the many instituted in the district court of Caddo parish as a result of the gas explosion in the Saenger building on January 12, 1930. It has been held by this court that said explosion was due to the accumulation of natural gas in the basement of said building, that such gas belonged to defendant, appellant herein, and that its escape from the mains and laterals of the defendant into the basement of the building was due to its negligence, and not to any negligence on the part of A. & J., Inc. Koch v. Southern Cities Distributing Co., 18 La. App. 664, 138 So. 178. The Supreme Court declined to review this decision, and in the case of A. & J., Inc., v. Southern Cities Distributing Company, 176 La. ──, 145 So. 361, that court gave plaintiff judgment for the damages inflicted to its building on account of the explosion.

In the present case, it is frankly conceded by counsel for appellant that the question of defendant's liability for the explosion and resultant injury is no longer debatable. The

questions argued by both sides are whether plaintiff was really in or about the building when the explosion occurred, and, if so, the nature, extent, and duration of the injuries received by him as a result of the explosion, if injured at all.

Plaintiff contends, and testified, that he was forced to remain in his home for about 90 days following the explosion, that during this period he was attended by physicians who treated him, and that he was confined to his bed a large part of this period. He is corroborated in his evidence by the testimony of several witnesses who state that during this time they visited his home and saw him in bed. There appears no good reason to discredit this testimony, but, on the other hand, the record discloses, beyond any doubt, that plaintiff was on the pay roll of the Washington-Youree Hotel Company for the entirety of the months of January and February, and for the first 6 days of March, 1930, and was paid for his services, as a painter, by that company for this time. He was paid the following amounts on the dates named:

| | | |
|---|---|---|
| January 16 | $87.50, | for 15 days in January. |
| February 5 | 56.56, | for 12 days in January. |
| February 20 | 15.00, | advance on salary. |
| February 22 | 42.50, | for 17 days (half time). |
| March 5 | 53.14, | balance on February salary. |
| March 16 | 30.00, | for 6 days in March. |

$284.70

There are in the record receipts signed by plaintiff, or checks issued to him by the hotel company and indorsed by him, covering each of the above-named payments. In addition to said amounts, the hotel company deducted $1.50 for January and a like amount for February from the salary due plaintiff to be applied on employer's liability insurance premiums. Thus it will be seen that for the months named plaintiff was paid over $200 by the hotel company, after eliminating the first eleven days of January. The explosion occurred on January 12th (Sunday), and plaintiff contends he was injured by the explosion. Several employees of the hotel testify that plaintiff continued to work there immediately after the date of the explosion. One recalls distinctly that he reported for duty and worked Monday after the explosion on Sunday. The only explanation plaintiff has offered for the payments on salary account made to him by the hotel company during part of the period he claims to have been confined to his home and bed because of his injuries is that, notwithstanding his disability to continue to paint and decorate for the company, his salary continued to run and was paid to him to March 6th, when he was discharged, or "let out." If this contention were true, it seems he should have been paid $150 for the month of February, instead of $112.14, the amount he actually received. Employees of the hotel deny that plaintiff was paid a running salary, regardless of whether he worked or not. It would certainly have been an unusual thing to do.

Plaintiff also contends that a brother painter, by the name of W. H. Bennett, substituted for him at the hotel so that he (plaintiff) would not lose his job during the period of his disability, and his testimony in this respect is corroborated by an officer of one of the labor unions of Shreveport, yet we find that Bennett was paid for 15 days' labor in February, while plaintiff was paid for practically the entire month. Bennett was not on the pay roll at all in January nor March. Bennett testified that he was paid personally for all the services he rendered to the hotel, and that another painter by the name of Miller took his place. The record shows that Barlow, Bennett, and Miller were all on the February pay roll, and that Barlow was on the March pay roll for 6 days and Miller for all of that month. If plaintiff expected payment of running wages by the hotel company, there would have been little or no reason for his solicitude about holding his job, or the desire for Bennett to work in his place.

From the foregoing brief résumé of the evidence in this case, it is obvious that a hopeless contradiction is presented, one that cannot be solved, with the light before us, with any degree of satisfaction. Unquestionably, there is yet outstanding evidence within the reach of both sides that will, if adduced in court, clear up this controversy,—at least, to the extent that a court may decide the case with the feeling of assurance of the correctness of its findings of fact that every court likes to have when finally disposing of such a controversy.

Plaintiff attached to his application for new trial the affidavits of several persons who say they visited him many times immediately after the explosion and found him at home and in bed suffering from the effects of his alleged injuries. One of these affidavits is signed by a painter who was working for the hotel company from January 12th to March 6th, and afterwards, who says that during this time plaintiff did not work there. Much of the evidence these witnesses declare they will give, if afforded an opportunity to do so, will be cumulative of that already in the record bearing upon the question of plaintiff's confinement to his home for the 90 days, or so, after he claims to have been injured by

the explosion, but as both sides were, and are now, dissatisfied with the judgment of the lower court, and in view of the irreconcilable nature of the evidence in the record, we have decided that the ends of justice will best be subserved by remanding the case for a new trial.

For the reasons herein assigned, the judgment of the lower court rejecting plaintiff's demands against A. & J., Inc., is affirmed; and the judgment against Southern Cities Distributing Company is annulled, avoided, and reversed, and this case is hereby remanded to the lower court for new trial as between plaintiff and the Southern Cities Distributing Company; costs of appeal are to be paid equally by appellants, and all other costs to await final determination of the case.